IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MARY SLAY, | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. § 4:13-CV-979-O |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF SOCIAL | § | |
| SECURITY, | § | |
| DEFENDANT. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**
**AND**
**NOTICE AND ORDER**

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation

of the United States Magistrate Judge are as follows:

**FINDINGS AND CONCLUSIONS**

**I.    STATEMENT OF THE CASE**

Plaintiff Mary Slay ("Slay") filed this action pursuant to Sections 405(g) and 1383(c)(3)

of Title 42 of the United States Code for judicial review of a final decision of the Commissioner

of Social Security denying her claim for supplemental security income ("SSI") under Title XVI

of the Social Security Act ("SSA"). On August 26, 2010 Slay applied for SSI, alleging her

disability began on January 1, 2005. (Transcript ("Tr.") 12, 112-18.) After her application for

SSI was denied initially and on reconsideration, Slay requested a hearing before an

Administrative Law Judge ("ALJ"). (Tr. 12, 63-78.) The ALJ held a hearing on June 6, 2012

1

and issued an unfavorable decision on August 28, 2012. (Tr. 9-21, 25-58.) On October 11, 2013, the Appeals Council denied Slay's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (Tr. 1-6.) Slay subsequently filed this civil action seeking review of the ALJ's decision.

## II.   STANDARD OF REVIEW

SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, and numerous regulatory provisions. *See* 20 C.F.R. Pt. 416. The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 416.920 (2009). First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 416.920(d). Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 416.920(e). And fifth, the impairment must

prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999). At steps one through four, the burden of proof rests upon the claimant to show he is disabled. *Crowley,* 197 F.3d at 198. If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen,* 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id.* A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel,* 209 F.3d 413, 417 (5th Cir. 2000); *Hollis,* 837 F.2d at 1383.[1]

---

[1] There are four elements of proof that must be weighed in determining whether substantial evidence of disability exists: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Wren v. Sullivan,* 925 F.2d 123, 126 (5th Cir. 1991).

3

### III.   ISSUES

In her brief, Slay presents the following issues:

1. Whether, based on the ALJ's residual functional capacity determination, Slay could perform the jobs identified by the VE at Step Five;  and

2. Whether the ALJ's hypothetical question to the VE was "In Error Of The Law."

(Plaintiff's Brief ("Pl.'s Br.") at 1, 7-20.)

### IV.   ALJ DECISION

In his August 28, 2012 decision, the ALJ found that Slay had not engaged in any substantial gainful activity since August 26, 2010, the date she applied for SSI.  (Tr. 14.)  The ALJ further found that Slay suffered from the following severe impairments: (1) history of rheumatoid arthritis, (2) lower back pain, (3) degenerative joint disease of the right hip, and (4) obesity.  (Tr. 14.)  Next, the ALJ held that none of Slay's impairments, or combination of impairments, met or equaled the severity of any impairments in the listing.  (Tr. 16.)  As to Slay's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work[2] as defined in 20 CFR 416.967(b), except she is limited to four hours of standing and walking;

---

[2] Pursuant to 20 C.F.R. § 416.967, light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

occasional climbing, balancing, stooping, kneeling, crouching and crawling; and frequent handling and fingering.  She is able to perform simple job tasks.

(Tr. 16 (emphasis omitted).)  The ALJ next found that Slay had no past relevant work.  (Tr. 19.) Then, the ALJ opined, based on Slay's RFC, age, education, and work experience, and the testimony of the VE, that Slay could perform other jobs of packager, cashier, or sorter that existed in significant numbers in the national economy.  (Tr. 19-20.)  Consequently, the ALJ found that Slay was not disabled.  (Tr. 20.)

## V.   DISCUSSION

### A.   Jobs Identified by VE at Step Five

First, Slay argues that the ALJ erred at Step Five in finding, based on the VE's testimony, that she could perform other jobs that existed in significant numbers in the national economy. (Pl.'s Br. at 7.)  Slay claims that, based on the RFC determination that she had the ability to perform a limited range of light work activities with certain restrictions, "the ALJ ultimately concluded the Plaintiff was not disabled because she could still perform the occupations of a packager, a cashier and a sorter."  (Pl.'s Br. at 7.)  Slay argues that neither the ALJ in his decision nor the VE at the hearing identified the *Dictionary of Occupational Titles* ("DOT") codes for the packager, cashier, or sorter jobs that were identified.  (Pl.'s Br. at 7-8.)

Specifically, Slay claims that a review of the DOT index reveals that there are 5 jobs with "packager" in the title and that Slay could not perform any of them because they required the ability to perform medium or heavy exertional work activities.  (Pl.'s Br. at 8.)  Furthermore, Slay argues that the DOT index lists 20 jobs with "cashier" in the title and that several of these are listed as sedentary in exertion.  (Pl.'s Br. at 8-10.)  Slay states, *inter alia*, that "[t]hese jobs

can be ruled out as the jobs the VE was referring to because, if the Plaintiff were able to only perform sedentary occupations with the ALJ's RFC for light work, then medical vocational guideline rule 201.09 directed a finding of disabled." (Pl.'s Br. at 10.) Moreover, Slay argues that several other cashier jobs are not applicable because they are rated as semi-skilled. (Pl.'s Br. at 10.) In addition, Slay argues that the rest of the cashier jobs have a reasoning development level ("RDL"), mathematical development level ("MDL"), or language development level ("LDL") of 2 and/or 3, which Slay could not perform because she has a marginal education only having completed the sixth grade. (Pl.'s Br. at 11-12.)

As to the 24 sorter positions listed in the DOT, Slay claims that she could not perform many of these jobs as, *inter alia*, they were either heavy or medium in exertion, were semi-skilled or skilled jobs, contained reasoning, mathematical and language developments higher than 1, or required frequent handling. (Pl.'s Br. at 13-15.) As to the three sorter jobs listed as sedentary, Slay claims that if these were the only jobs available that she could perform, medical vocational guideline rule 201.09 would direct a finding of disabled. (Pl.'s Br. at 14.) As to the two sorter jobs that were light in exertion, unskilled with a specific vocational preparation ("SVP") level of 2,[3] rated as RDL 1, MDL 1, and LDL 1, and had handling and fingering limitations at frequent or less, Slay argues that she could not perform such jobs because they "are stand up jobs by the very nature of the positions." (Pl.'s Br. at 15-16.)

---

[3] In addition to exertional limits, jobs are categorized as unskilled, semi-skilled and skilled. To determine the skill level, consideration is given to how long it takes to learn the job by examining the level of SVP. SVP levels 1–2 (short demonstration only and up to one month respectively) are unskilled jobs, levels 3–4 (up to three months and up to six months) are semi-skilled, and levels 5 and higher (over six months and up) are skilled jobs.

In this case, as stated above, the ALJ found that Slay had the RFC to perform light work except that she was limited to: (1) four hours of standing and walking; (2) occasional climbing, balancing, stooping, kneeling, crouching, and crawling; (3) frequent handling and fingering; and (4) simple job tasks. (Tr. 16.)  Thereafter, at Step Five, the ALJ found, based on Slay's age, education, work experience, and RFC determination that Slay could perform the jobs of packager, cashier, or sorter that existed in significant numbers on the national economy. (Tr. 19-20.)  In making such a determination, the ALJ stated:

> In determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. . . .
>
> If the claimant had the residual functional capacity to perform the full range of light work, a finding of "not disabled would be directed by Medical-Vocational Rule 202.17 and Rule 202.10. However, the claimant's ability to perform all or substantially of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational based, the Administrative Law Judge asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity. The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as a packager, cashier or sorter. In the national economy, there are about 80,000 jobs as a packager, 80,000 jobs as a cashier and 50,000 to 60,000 jobs as a sorter, which could be performed by the hypothetical individual.
>
> Pursuant to [Social Security Ruling ("SSR")] 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.
>
> Based on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national

economy.   A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

(Tr. 19-20.)

The claimant bears the burden of proof on the first four steps, and then the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Newton*, 209 F.3d at 453. "Once the Commissioner makes this showing, the burden of proof shifts back to the claimant to rebut this finding." *Newton*, 209 F.3d at 453. In this case, the ALJ supported his determination at Step 5 by relying upon the testimony of the VE.

A VE is called to testify because of his familiarity with job requirements and working conditions. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Id.* In testifying, a vocational expert "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." *Fields*, 805 F.2d at 1170.

Contrary to Slay's arguments, the Court concludes that, based on the testimony of the VE at the hearing, the ALJ did have substantial evidence to support his decision at Step Five that Slay could perform the jobs of packager, cashier or sorter that existed in significant numbers in the national economy. (Tr. 19-20.) While Slay complains that the ALJ did not cite any DOT codes for the jobs identified at Step Five, Slay cites no support for her claim that such DOT

numbers must be identified by the VE. *See Haas v. Barnhart,* 91 F. App'x 942, 948 (5th Cir.2004) ("[The claimant] cites no support for his claim that the DOT numbers for positions identified by the VE must be given."); *McMillian v. Colvin,* No. 4:12-CV-661-A, 2014 WL 61172, at \*5, (N.D. Tex. Jan. 6, 2014) ("Although not required to do so, the VE did not identify the specific DOT codes associated with the jobs of customer service representative and phone order clerk."); *Nichols v. Astrue,* No. 5:09–CV–18–DCB–JMR, 2010 WL 5690390, at \*12 (S.D. Miss. Apr.20, 2010) ("Plaintiff does not cite any support for his claim that the DOT numbers for positions identified by the VE must be given."), *adopted in Nichols v. Astrue,* 5:09–CV18–DCB–JMR, 2011 WL 359141 (S.D. Miss. Feb.1, 2011)).

While Slay is correct that at least some of the jobs in the DOT for packager, cashier, and sorter appear to require abilities that are outside of Slay's RFC determination, the Court notes that SSR 00-4p clarifies that the DOT lists the ***maximum*** requirements for a position as it is generally performed, not the full range of requirements.  SSR 00-4p, 2000 WL 1898704, at \*3 (S.S.A. Dec. 4, 2000).  Moreover, the Court does not need to determine whether the ALJ erred in relying on the VE's testimony that Slay could perform some jobs that are outside of Slay's RFC determination, as there are at least two sorter positions, as noted by Slay, that do fall within the ALJ's RFC determination as they are light in exertion, unskilled with a SVP of 2, rated as RDL 1, MDL 1, and LDL 1 and have handling and fingering limitations at frequent or less.  (*See* Pl.'s Br. at 15.)  Even assuming that the ALJ erred at Step Five in relying on the VE's testimony that he could perform jobs that were outside Slay's RFC determination, any error is harmless because the ALJ also found that Slay could perform at least two jobs that were within the RFC

determination. *See, e.g., Hallcy v. Astrue*, No. 5:09-CV-135-BG, 2010 WL 2605214, at *3 (N.D. Tex. May 27, 2010) ("[E]ven if the court were to assume, *arguendo*, that the ALJ's determination that [the claimant] could perform past work as a cashier was reached in error, any error must be considered harmless because the ALJ determined that she could perform another job she worked at in the past."). While Slay argues that these two jobs are "stand up jobs by the very nature of the positions," Slay's evidence in support is speculative and conclusory. As noted above, the value of a VE is that he "is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job." In this case, the VE testified that a person with Slay's RFC determination could perform various jobs that exist in significant numbers in the national economy. Such testimony provides substantial evidence for the ALJ to rely on at Step Five. Because there is no error, remand is not required.

## B. Hypothetical Question to the VE

Slay also argues that the ALJ's hypothetical question to the VE was "in error of the law." Specifically, Slay states:

> At the hearing, the ALJ's hypothetical question to the VE began with the following[:] "consider a person of Ms. Slay's age, education and lack of work history with the ability to perform light work. . . ." (TR 54[.]) The claimant argues the ALJ's characterization of his RFC as "light" before first identifying the Plaintiff's functional limitations was in error of law and prejudiced the Plaintiff's right to a fair administrative review. The Social Security Rulings state:
>
> > The RFC assessment must *first identify* the individual's functional limitations or restrictions and *assess his or her work-related abilities on a function-by-function basis. . . . Only after that may the RFC be expressed in terms of the exertional levels* of work,

sedentary, light, medium, heavy, and very heavy. Social Security
Ruling 96-8p, *emphasis added*.

As noted above, Social Security's definitions of the exertional strengths are based upon the United States Department of Labor's definitions of the exertional strengths. *See*, 20 C.F.R. § 416.967. The *SCO* defines light work as requiring lifting up to 20 pounds of force occasionally. *See*, SCO, at C-2. The *SCO* also states a job is classified as light in exertion, even if the weights lifted are negligible, if the job requires one of the following:

> 1) walking or standing to a significant degree; 2) sitting most of the
> time while pushing or pulling arm or leg controls; or 3) working at
> a production rate pace while constantly pushing or pulling
> materials even though the weight of the materials is negligible.
> SCO, at C-2.

Therefore, a job is defined as light (if it does not require lifting 20 pounds occasionally or standing and walking to a significant degree) if it requires: 1) pushing or pulling arm or leg controls most of the time while sitting; or 2) constantly pushing or pulling material of a negligible weight. *See*, Id.

In the Plaintiff's case, before the ALJ identified the Plaintiff's functional limitations, he planted the poisonous seed of "light" work in the mind of the VE. This poisonous seed resulted in the VE considering jobs classified as "light," without fully considering whether the Plaintiff could actually perform the jobs with all of the functional limitations identified in the hypothetical RFC. This fact is exposed by VE's testimony. The first response the VE gave after hearing the ALJ's hypothetical was, "I would look at the light, unskilled jobs." (TR 54[.]) The drafters of the Social Security Rulings were concerned of this exact error when Social Security Ruling 96-8p was enacted. . . . In the Plaintiff's case, the ALJ's hypothetical was defective because it failed to properly identify the Plaintiff's functional limitations before classifying the RFC as light. This error or poisonous seed resulted in the VE identifying jobs classified by the *DOT* as light but actually could not be performed with the ALJ's specific limitations. This fact is highlighted by the VE only identifying the broad categories of packager, cashier and sorter jobs. Further, the specific jobs, within those broad categories of packager, cashier and sorter, could not actually be performed by an individual with the limitations expressed in the ALJ's RFC.

(Pl.'s Br. at 18-19.)

Slay also argues that the VE's testimony was not reliable because she did not know the definition of light work. (Pl.'s Br. at 19.) Specifically, Slay states:

> The VE acknowledged that a job can be characterized as light work if the lifting requirements of 20 pounds are met and if the standing and walking requirements are met. However, she also stated the last way a job could be characterized as light is if the individual were seated and was using their hands on a "consistent basis, frequent basis." The last method in which the VE stated a job could be characterized as light rendered her testimony as unreliable. The *SCO* states a job is characterized as light if the person is "pushing or pulling" arm or leg controls while sitting most of the time or while "constantly pushing or pulling" negligible materials. The VE stated the characterization turned on using the hands frequently. Using the hands falls under the SCO's nonexertional functions of handling, fingering and feeling. Moreover, none of the jobs identified in the *DOT* index listed above as packagers, cashiers or sorters required constant pushing and pulling of arm or leg controls. Either way (whether the ALJ planted the poisonous seed of "light" in the VE's mind before identifying the functional limitations or whether the VE misunderstood the definition of light work), there is no reliable basis for the ALJ's findings of fact that the Plaintiff could perform a significant number of jobs.

(Pl.'s Br. at 20 (internal citations omitted).)

As noted above, a vocational expert is called to testify because of his familiarity with job requirements and working conditions. *Vaughan*, 58 F.3d at 132. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the vocational expert must reasonably incorporate all of the disabilities recognized by the ALJ's residual functional capacity assessment, and the claimant or his representative must be afforded the opportunity to correct any deficiencies in the ALJ's question. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ's hypothetical fails to

incorporate all such functional limitations, the ALJ's determination is not supported by substantial evidence. *Id.*

In this case, as noted above, the ALJ found that Slay had the RFC to perform light work except she was limited to: (1) four hours of standing and walking; (2) occasional climbing, balancing, stooping, kneeling, crouching and crawling; (3) frequent handling and fingering; and (4) the performance of simple job tasks. (Tr. 16.) Further, the ALJ included all such limitations that he had found in the RFC determination in the hypothetical question to the VE. (Tr. 54.) The VE testified that an individual limited to such work could perform the jobs of packagers, cashiers, and sorters that existed in substantial numbers in the national economy. (Tr. 54-55.) The ALJ relied on the VE's testimony that specifically related to the functional limitations that the ALJ actually **found** in his RFC assessment. Because, as stated above, the ALJ's RFC determination was supported by substantial evidence and the ALJ's hypothetical to the VE "tracked" the RFC assessment, the ALJ did not commit error. *See Berry v. Astrue*, No. 3:11-CV-02817-L (BH), 2013 WL 524331, at *23 (N.D. Tex. Jan. 25, 2013), *adopted in* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (Lindsay, J.); *Gipson v. Astrue,* No. 3:10-CV-1413-BK, 2011 WL 540299, at *6–7 (N.D. Tex. Feb. 11, 2011) (holding that hypothetical reasonably incorporated disabilities found by ALJ because question closely tracked ALJ's RFC assessment, which took into consideration all impairments).

As to Slay's argument that pursuant to SSR 96-8p, the ALJ should have first identified her functional limitations before he "planted the poisonous seed of 'light' work in the mind of the VE," the Court notes that SSR 96-8p states that "[t]he RFC assessment must first identify the

13

individual's functional limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R.

[§§] 404.1545 and 416.945. Only after that may an RFC be expressed in terms of the exertional

levels of work, sedentary, light, medium, heavy, and very heavy."[4]  *Id.*  In this case, it is clear

that the ALJ did set forth Slay's functional limitations to the VE, albeit after he had indicated

that Slay could perform light work.  Slay, however, wants the Court to find that the ALJ erred

because he did not follow the exact order of analysis as set forth in SSR 96-8p.  The Court

refuses to do so as procedural perfection in administrative proceedings is not required and Slay

has not demonstrated prejudice.[5]  *See Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988); *Mays

v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative

proceedings is not required.  This court will not vacate a judgment unless the substantial rights of

a party have been affected.").  *See Pearson v. Barnhart*, 2005 WL 1397049, at *4 (E.D. Tex.

---

[4] 20 C.F.R. § 416.945(b) includes the functions of walking, standing, sitting, pushing, pulling, lifting, carrying, and other physical functions, including manipulative or postural functions, such as reaching, handling, stooping, and crouching.  20 C.F.R. § 416.945(c) includes mental abilities such as limitations in understanding, remembering, and carrying out instructions; and in responding appropriately to supervision, co-workers, and work pressures in a work setting.  20 C.F.R. § 416.945(d) includes other abilities that impairments affect, such as skin impairment(s); epilepsy; impairment(s) of vision, hearing, or other senses; and impairment(s) imposing environmental restrictions.

[5] The Court notes that there is a different, albeit similar, standard of review when there is a violation of a social security ruling as opposed to a violation of a regulation.  Violation of a regulation invokes a "harmless error" analysis whereas violation of a ruling invokes a "prejudice" analysis.  *See McNair v. Comm'r of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 838 (N.D. Tex. 2008) (stating that "[p]rejudice and harmless error analysis, although similar in substance, are different procedurally").  "Remand for failure to comply with a [social security] ruling . . . is appropriate only when a complainant affirmatively demonstrates ensuant prejudice." *McNair*, 537 F. Supp. 2d at 838 (citing *Hall v. Schweiker*, 660 F.2d 116, 119 (5th Cir. 1981)).  "A claimant can show prejudice by showing that adherence to the ruling might have led to a different decision." *Id.* (citing *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000)).  "Harmless error exists when it is inconceivable that a different administrative conclusion would have been reached absent the error. *McNair*, 537 F. Supp. 2d. at 838 (citing *Bornette v. Barnhart*, 466 F. Supp. 2d 811, 816 (E.D. Tex. 2006)).

May 23, 2005) (citing *Newton v. Apfel,* 209 F.3d 448, 458 (5th Cir. 2000) (stating that a violation of a SSR may "constitute error warranting reversal and remand when an aggrieved claimant shows prejudice resulting from the violation")).

In this case, there is no indication that the VE did clearly understand the ALJ's hypothetical that Slay was limited to an RFC of light work *with* several additional functional limitations. For instance, the VE specifically commented that she was looking at unskilled jobs that would allow a person to sit or stand. (Tr. 54.) In addition, the VE and the ALJ specifically discussed the fingering and handling restriction. (Tr. 55.) Because any error committed by the ALJ as to the hypothetical to the VE was harmless, remand is not required.

As to Slay's argument that the VE did not understand the definition of light work, the Court finds that any error is harmless. Even assuming the VE incorrectly stated the exact definition of all situations of light work, Slay has failed to show how she was prejudiced by such error in such a manner that the result would have changed. In this case, the VE was qualified to testify as a VE and understood her role in determining whether there were jobs that were available in sufficient numbers in the national economy that Slay could perform. Consequently, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document.  The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendations to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 3**, **2015** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation.  It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 17, 2015.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

17